For the Northern District of California

1
2
3
4
5
6
7           IN THE UNITED STATES DISTRICT COURT

8       FOR THE NORTHERN DISTRICT OF CALIFORNIA

9               SAN FRANCISCO DIVISION

10
11   SHIRIN ABBASZADEH ZAHABI,                No. C 12-00014 RS

12               Plaintiff,                   **ORDER GRANTING MOTION TO**
                                              **DISMISS CLAIM THREE AND**
13        v.                                  **GRANTING IN PART AND**
                                              **DENYING IN PART MOTION TO**
14   BANK OF AMERICA, N.A., ARASH             **STRIKE**
     BAHMAN and DOES 1-50, inclusive,
15
16               Defendants.
17   _____/

18
19                 I.       INTRODUCTION

20        This matter arises from the foreclosure of Plaintiff Shirin Abbaszadeh Zahabi's family

21   home located at 1343 Shoal Drive in San Mateo, California ("the Property").  Plaintiff alleges

22   defendants Bank of America ("BoA") and Arash Bahman improperly initiated foreclosure

23   proceedings without providing her notice or opportunity to cure her ex-husband's default.  This

24   Court granted in part and denied in part defendants' motion to dismiss plaintiff's First Amended

25   Complaint ("FAC") and Second Amended Complaint ("SAC").  All defendants now move to

26   dismiss the third claim for relief for violation of the Equal Credit Opportunity Act ("ECOA") in

27   plaintiff's Third Amended Complaint ("TAC), contending the claim is untimely and that plaintiff

28

cannot establish she is an "applicant" as defined by the statute.  Defendants also move to strike portions of plaintiff's TAC.  Pursuant to Civil Local Rule 7-1(b), this matter has been taken under submission and decided without oral argument.  For the following reasons, defendants' motion to dismiss is granted and defendants' motion to strike is granted in part.

## II.       BACKGROUND[1]

Plaintiff and Adel Zahabi were legally married from March 2, 2001 to December 20, 2011.  On or about August 13, 1999, while the couple was engaged, Mr. Zahabi purchased the Property, secured by a loan from BoA.  After plaintiff and Mr. Zahabi were married and through November 2009, Mr. Zahabi made mortgage payments with community funds from a joint account held with plaintiff at BoA.  Mr. Zahabi represented to his wife, friends, and family that both he and plaintiff were listed on the house title and loan documents.  During this time, and unbeknownst to plaintiff, Mr. Zahabi refinanced the Property at least ten times with the help of his cousin, Arah Bahman, a loan officer for BoA.  Although Bahman, according to plaintiff, knew of Mr. Zahabi's marital status, he listed Mr. Zahabi as a widower or single man on all loan documents.  Significantly, Mr. Zahabi made these refinance payments with funds from the couple's joint account as well.

On or about January 15, 2009,[2] Mr. Zahabi executed his final refinance of the Property ("Subject Loan") in the amount of $408,000.  The Deed of Trust did not list Mr. Zahabi's marital status, nor was there any attempt to address plaintiff's interest in the Property before making the Subject Loan.  A few months later, plaintiff filed for divorce.  In November 2009, she began transmitting to Mr. Zahabi half of the monthly mortgage payments owed.  In finalizing the divorce, plaintiff learned that Mr. Zahabi, without plaintiff's knowledge, had stopped making mortgage payments in the summer of 2010, which prompted BoA to file a Notice of Default on November 8, 2010 naming Mr. Zahabi alone.

---

[1] The facts recited above derive from the TAC, which must be taken as true for the purposes of a motion to dismiss.
[2] As explained in the Order dismissing the FAC, this Court took judicial notice of the Deed of Trust, which is dated January 12, 2009 and recorded in the County of San Mateo on January 15, 2009 .  Thus, the Subject Loan will be deemed effective as of January 15, 2009.

During divorce proceedings, Mr. Zahabi was directed to pay the amount required by BoA to reinstate the loan. He did not, and on or about February 11, 2011, BoA caused a Notice of Trustee's Sale to be filed. Subsequently, Mr. Zahabi was ordered to pay the amount owed to avoid foreclosure. He thereafter represented to the state court that he had so complied, providing a wire transfer as proof of payment. Later, plaintiff learned these payments had not been made and that a sale of the Property was imminent. To facilitate her ability to talk with BoA representatives, plaintiff obtained an order from the Superior Court authorizing such communication, but BoA representatives still refused to talk with her. On March 9, 2011, plaintiff appeared at the foreclosure and attempted to stop the sale by declaring her interest in the Property and by proffering funds to bring the loan current. BoA directed the foreclosure to go forward.[3] Plaintiff filed suit in January 2012 against BoA and Bahman.

Plaintiff sought leave to amend her complaint to add a claim for relief under the ECOA based on a disenfranchisement theory recently advanced by the United States Department of Justice in an unrelated case, which was granted. In the TAC, plaintiff brings claims for: (1) Wrongful Foreclosure against BoA; (2) Violations of TILA and Federal Reserve Regulation Z against BoA; (3) Violations of ECOA and Regulation B against BoA; (4) Aiding and Abetting Fraud; (5) Negligence or Active Carelessness; (6) Intentional Infliction of Emotional Distress; (7) Unfair Business Practices; (8) Quiet Title; and (9) Declaratory Relief against BoA. All defendants move to dismiss Claim Three and to strike portions of the TAC.

### III.    LEGAL STANDARD

A. <u>Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6)</u>

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Pleadings must be so construed so as to do justice." Fed. R. Civ. P. 8(e). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face."

---

[3] After acquiring the trustee's deed to the Property, BoA filed an unlawful detainer action in state court to evict plaintiff and her children. Plaintiff successfully moved to enjoin that proceeding, and thus continues to live at the Property. After a hearing on August 1, 2012, the Superior Court awarded plaintiff the entire interest in the Property.

*Ashcroft v. Iqbal,* 566 U.S. 652, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.*  This determination is a context-specific task requiring the court "to draw in its judicial experience and common sense." *Id.* at 1950.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party.  *Twombly*, 550 U.S. at 570.  "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

In dismissing a complaint, leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment.  *Lucas v. Dep't of Corporations*, 66 F.3d 245, 248 (9th Cir. 1995).  When amendment would be futile, however, dismissal may be ordered with prejudice.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

IV.     DISCUSSION

A. *Motion to Dismiss Third Claim for Relief under the ECOA*

Defendants move to dismiss plaintiff's claim for relief under the ECOA on the basis that the claim is untimely, and even if timely, plaintiff is not an "applicant" under the terms of the statute.  Plaintiff responds that her claim is not time barred, as this was a continuing violation of

1  the ECOA, and that she falls within the protections of the statute, as community property was

2  used to secure the extension of credit.

3         Defendants argue foreclosure activities are irrelevant for the purposes of the ECOA and

4  thus any improper conduct during the foreclosure process cannot transform this case into a

5  "continuing violation" such that the statute of limitations is extended.  *See Ramirez v.*

6  *GreenPoint Mortg. Funding, Inc.*, 633 F.Supp.2d 922, 929 (N.D. Cal. 2008) (finding that

7  "[a]lthough each loan origination could be seen as a violation of the FHA and ECOA, this does

8  not mean that the continuing doctrine does not apply."); *Davenport v. Litton Loan Servicing, LP*,

9  725 F.Supp.2d 862, 875 (N.D. Cal. 2008) (acknowledging application of the "continuing

10 violation" theory in ECOA claims) (citing *Havens Realty Corporation v. Coleman,* 455 U.S. 363,

11 381–82 (1982)).  The statute provides that it extends to "any aspect of a credit transaction."  12

12 C.F.R. 202.4(a).  A "credit transaction" is defined as "every aspect of an applicant's dealings

13 with a creditor regarding an application for credit or an existing extension of credit."  12 C.F.R.

14 202.2(m).  The foreclosure process is certainly an "aspect" of a credit transaction, as it is a

15 consequence of the borrower failing to meet the terms of the agreement.  Nonetheless, as the

16 definition of a "credit transaction" reflects, plaintiff must still be an "applicant" in order to find a

17 continuing violation.  For the reasons discussed below, plaintiff has not shown she meets the

18 requirements of an "applicant" under the ECOA.

19        The ECOA provides that "[a] creditor shall not refuse to grant an individual account to a

20 creditworthy applicant on the basis of sex, marital status, or any other prohibited basis."  12

21 C.F.R. 202.7(a).  If the "applicant qualifies under the creditor's standards of creditworthiness for

22 the amount and terms of the credit requested" the signature of the applicant's spouse is not

23 required. 12 C.F.R. 202.7(d)(1).  The provision goes on to clarify that "the submission of a joint

24 financial statement or other evidence of jointly held assets" shall not be deemed an "application

25 for joint credit" requiring the signature of a spouse.  *Id.*  When an applicant requests secured

26 credit, as Mr. Zahabi did, a creditor "may" require the signature of the applicant's spouse on any

27 instrument believed necessary to make the security available to satisfy the debt.  12 C.F.R.

28

202.7(d)(4).

Under these provisions, plaintiff cannot be considered an "applicant." There is no question that plaintiff herself did not seek to apply for an extension of credit. Rather, her then husband Mr. Zahabi applied for the mortgage refinance alone, not as a joint applicant. The fact that joint property was used to secure the refinance is insufficient under this statute to transform the application into a "joint application" requiring the signature of plaintiff. While a creditor "may" require the signature of an applicant's spouse when joint property is used to secure a debt, the creditor is not required to do so under the terms of ECOA. Thus, the fact that BoA did not obtain plaintiff's signature on the loan, even though community property was used as security for the loan, does not make plaintiff an "applicant" for the purposes of the ECOA. As plaintiff cannot establish that she falls within the protections of the statute, this claim must be dismissed without leave to amend.

B. *Motion to Strike*

Defendants first move to strike paragraphs 55 and 57 of the TAC, which refer to "damages" in plaintiff's second claim for relief under the TILA. Defendants argue that, in dismissing plaintiff's SAC, the TILA claims for damages were found to be time barred and dismissed without leave to amend. Any reference to damages under that claim, they therefore allege, is improper. Plaintiff responds that the averments are proper in the context of the rescission claim. If rescission is granted, under California Civil Code § 1692 damages may be considered as an element necessary to afford complete relief. As that provision contemplates the award of restitution and consequential damages, an assertion of damages is not inconsistent with a claim for rescissionary relief under the TILA. Accordingly, paragraphs 55 and 57 need not be stricken from plaintiff's TAC.

Defendants also move to strike plaintiff's ninth claim for declaratory relief. Plaintiff acknowledges that this claim should have been removed from the pleadings, and thus agrees that the claim should be stricken from the TAC. The motion, therefore, is granted on that basis.

No. 12-cv-00014 RS
ORDER

6

V.      CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Claim Three is granted. Defendants' motion to strike paragraphs 55 and 57 is denied.  Defendants' motion to strike claim Nine is granted.


IT IS SO ORDERED.


Dated:   April 15, 2013

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE